AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Alcatel Cellphone<br>Seized under FP&F No. 2026250100023501-001<br>(Target Device 1) | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.   26mj3503 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Secs. 841 and 846;<br>Secs 952, 960, 963; 18 U.S.C.<br>Secs. 1956-57 | Conspiracy to Distribute Controlled Substances; Conspiracy to Import Controlled<br>Substances; Conspiracy to Launder Monetary Instruments |

The application is based on these facts:

See attached Affidavit of HSI Special Agent Alyssa Julian

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Alyssa Julian*
*Applicant's signature*

Alyssa Julian, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:   06/11/2026

*Judge's signature*

City and state:   San Diego, California

Hon. Brian J. White, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-1

### *Items to be Searched*

The item to be searched is as follows:

Black Alcatel Cellphone

Seized under FP&F No. 2026250100023501-001

(Target Device 1)

**Target Device 1** is currently in the custody of Homeland Security Investigations at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

**ATTACHMENT B**

*Items to be Seized*

Authorization to search the cellular telephones described in Attachment A-1 through A-13 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **November 1, 2024, up to and including March 26, 2026**:

a. tending to indicate efforts to import controlled substances from Mexico into the United States, and/or distribute controlled substances within the United States;

b. tending to identify efforts to launder the proceeds of drug trafficking, conduct transactions that conceal the ownership, source, or nature of the funds involved, and/or move bulk currency across the border without declaring the funds;

c. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States, the distribution of controlled substances within the United States, and/or the laundering of the proceeds from drug trafficking;

d. tending to identify co-conspirators, criminal associates, or others involved in the importation of controlled substances from Mexico into the United States, the distribution of controlled substances within the United States, and/or the laundering of the proceeds from drug trafficking;

e.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, the distribution of controlled substances within the United States, and/or the laundering of the proceeds from drug trafficking, such as stash houses, load houses, or delivery points; and/or

f.    tending to place in context, identify the creator, sender, or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841 and 846 (Conspiracy to Distribute Controlled Substances); Sections 952, 960 and 963 (Conspiracy to Import Controlled Substances); and Title 18, United States Code, Sections 1956 and 1957 (Conspiracy to Launder Monetary Instruments).

**<u>AFFIDAVIT</u>**

I, Special Agent Alyssa Julian, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.      I submit this affidavit in support of an application for a warrant to search the electronic devices described in the table below (collectively, the **Target Devices**):

| Target Device No. | Description | Location (Inside 2331 Shamrock Street Residence) |
|---|---|---|
| **Target Device No. 1** | Black Alcatel Cellphone Seized under FP&F No. 2026250100023501-001 | Top of Refrigerator |
| **Target Device No. 2** | eTalk Cellphone Seized under FP&F No. 2026250100023501-002 | Closet of PEREZ's Bedroom |
| **Target Device No. 3** | Black Alcatel Cellphone Seized under FP&F No. 2026250100023501-003 | Closet of PEREZ's Bedroom |
| **Target Device No. 4** | Black Apple iPhone Seized under FP&F No. 2026250100023501-004 | On the bed in PEREZ' bedroom |
| **Target Device No. 5** | Black Nokia Cellphone Seized under FP&F No. 2026250100023501-005 | On the bed in PEREZ' bedroom |
| **Target Device No. 6** | Black Samsung Cellphone Seized under FP&F No. 2026250100023501-006 | Closet of PEREZ' Bedroom |
| **Target Device No. 7** | Blue Motorola Cellphone Seized under FP&F No. 2026250100023501-007 | Closet of PEREZ' Bedroom |
| **Target Device No. 8** | Blue AT&T Cellphone Seized under FP&F No. 2026250100023501-008 | Closet of PEREZ' Bedroom |
| **Target Device No. 9** | Black LG Cellphone Seized under FP&F No. 2026250100023501-009 | Closet of PEREZ' Bedroom |

| Target Device No. 10 | Black ZTE Cellphone Seized under FP&F No. 2026250100023501-010 | Closet of PEREZ' Bedroom |
|---|---|---|
| Target Device No. 11 | Black Samsung Cellphone Seized under FP&F No. 2026250100023501-011 | Closet of PEREZ' Bedroom |
| Target Device No. 12 | White Apple iPhone Seized under FP&F No. 2026250100023501-012 | Closet of PEREZ' Bedroom |
| Target Device No. 13 | Gold Apple iPhone Seized under FP&F No. 2026250100023501-013 | Closet of PEREZ' Bedroom |

The **Target Devices** are further described in Attachments A-1 through A-13, respectively, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, 963 (Conspiracy to Import Controlled Substances); Sections 841 and 846 (Conspiracy to Distribute Controlled Substances); and Title 18, United States Code, Sections 1956 and 1957 (Conspiracy to Launder Monetary Instruments) (collectively, the **Target Offenses**) as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Manuel PEREZ Gastelum referred to as the defendant for conspiracy to distribute cocaine. The **Target Devices** are currently in the custody of Homeland Security Investigations and located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates, times, and amounts described are approximate.

### Training and Experience

3. I have been a Special Agent with Homeland Security Investigations (HSI) since March 2022. I am currently assigned to the Cartel Investigations Team at the Office of the Deputy Special Agent in Charge (DSAC) in San Diego, California. I generally

investigate violations of the United States Code with an international nexus, including drug importation/trafficking and bulk cash smuggling. My main duties include investigating the trafficking of illicit controlled substances and the importation and distribution of illegal substances in violation of Title 21 of the United States Code.

4. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I am also "federal law enforcement officer" within the meaning of Rule 41(2)(C) of the Federal Rules of Criminal Procedure in that I am engaged in enforcing the criminal laws of the United States.

5. Prior to my assignment with HSI, I was employed as a United States Border Patrol Agent in San Diego, California from October 2017 to March 2022. I am a graduate of the Federal Law Enforcement Training Centers, located in Glynco, Georgia and Artesia, New Mexico. I have successfully completed twelve months of combined formalized training in the Criminal Investigators Training Program, HSI Special Agent Training Program, and United States Border Patrol Academy. My training courses included but were not limited to criminal law, constitutional law, enforcement techniques, undercover operations, and search/arrest warrants.

6. As a federal law enforcement officer, I have participated in numerous investigations involving the acquisition, importation, and distribution of controlled substances into and throughout the United States. As a result, I have performed assorted investigative techniques to include physical and electronic surveillance, analytical analysis, custodial and non-custodial debriefs, and conducting undercover operations. I have applied for warrants and submitted criminal complaints. Additionally, I am familiar with the communications and methodology used by narcotic traffickers, various concealment methods used to import controlled substances along the southwest border and proficient in identifying and defeating deceptive behaviors and actions taken by drug traffickers to disguise their criminal activities.

7.      During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.  Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a extensive knowledge of the operational habits of narcotics traffickers.

8.      Based on my training and experience I am familiar with how drug traffickers communicate and operate. For example, I am aware that drug traffickers frequently discuss criminal activity using cellular telephones, social media applications and often use coded language to obscure these conversations. I also know that drug traffickers change telephones to evade detection by law enforcement. Moreover, I know that drug traffickers obtain telephones from third parties and or subscribe to them in fictitious names to mask the identity of the individuals using the telephones. I am familiar with the typical make up and operation of gangs and drug trafficking organizations, including the distribution, storage, and transportation of the drugs, the collection of money, which represents the proceeds of drug trafficking and other criminal activity.

9.      Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a.      tending to indicate efforts to import controlled substances from Mexico into the United States, and/or distribute controlled substances within the United States;

b.   tending to identify efforts to launder the proceeds of drug trafficking, conduct transactions that conceal the ownership, source, or nature of the funds involved, and/or move bulk currency across the border without declaring the funds;

c.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States, the distribution of controlled substances within the United States, and/or the laundering of the proceeds from drug trafficking;

d.   tending to identify co-conspirators, criminal associates, or others involved in the importation of controlled substances from Mexico into the United States, the distribution of controlled substances within the United States, and/or the laundering of the proceeds from drug trafficking;

e.   tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, the distribution of controlled substances within the United States, and/or the laundering of the proceeds from drug trafficking, such as stash houses, load houses, or delivery points; and/or

f.   tending to place in context, identify the creator, sender, or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

**A.   2024 to January 2025: Investigation into PEREZ leads to Identification and Surveillance of Erick Rosendo Lopez Ruiz**

10.   In 2024, investigators from Homeland Security Investigations began to investigate Manue PEREZ Gastelum regarding possible involvement in cross-border drug trafficking. As part of the early investigation, investigators obtained records for two MoneyGram transaction from June of 2024 that listed PEREZ's telephone number as 52-673-114-9969 (the -9969 number) and PEREZ's address as 2331 Shamrock Street in San Diego, California. From investigating the -9969 number, investigators identified Erick Rosendo Lopez Ruiz as a frequent contact for PEREZ, and found transactions where Lopez Ruiz sent money to PEREZ's wife, Viviana Chaparro.

11.   Investigators then began to conduct surveillance on Lopez Ruiz at the address listed on his California driver's license (6985 Waite Drive, Apt. 77, La Mesa, California).

During surveillance in November 2024, investigators watched Lopez Ruiz as he went to a storage unit located near Home Avenue and Euclid Avenue (Super Storage). Investigators obtained records for the storage unit that they believed Lopez Ruiz was accessing (#19), and learned that the unit was rented by PEREZ. The rental documents listed PEREZ's address as 2331 Shamrock Street in San Diego, California.

**B.    January 2025: Surveillance of Lopez Ruiz Leads to Seizure of 19.8 Pounds of Cocaine**

12.    On January 31, 2025, at approximately 7:26 AM, agents observed Erick Rosendo Lopez Ruiz in his gray VW Jetta bearing California license plates 9RAX697 in a Walmart parking lot, located at 75 Broadway, Chula Vista, California. Agents observed Lopez Ruiz park next to a white Ford F-150 on its passenger side. Lopez Ruiz was then observed exiting his vehicle and opening the passenger front and rear cab doors of the F-150. Lopez Ruiz was then seen retrieving a blue bag from the rear compartment of the F-150. Lopez Ruiz subsequently closed the passenger and rear cab doors and re-entered his vehicle with the blue bag, then drove away.

13.    On that same day, January 31, 2025, at approximately 7:35 AM, Chula Vista Police Department (CVPD) conducted a traffic stop on the gray VW Jetta operated by Lopez Ruiz. Officers approached Lopez Ruiz and observed, in plain view, a blue bag in the passenger seat area of the VW. A CVPD K-9 unit screened the vehicle and alerted to the blue bag. Officers inspected the contents of the blue bag and discovered a shoebox with two plastic-sealed packages inside. Two additional plastic-sealed packages were found underneath the shoe box. The contents of the packages field tested positive for the properties of cocaine weighing a total of 19.8 lbs. Officers seized two cellular devices, $1,000 USD, and the four packages of cocaine.

**C.    Search of Lopez Ruiz's Cellphones Leads to Identification of PEREZ as Coordinator**

14.    During a review of the cellphones seized from Lopez Ruiz on the day of his arrest, conversations were discovered on the iPhone 7 between Lopez Ruiz and an

individual saved in Lopez Ruiz' phone as "Manuu" with the phone number 52-667-230-2077. The conversations revealed that Lopez Ruiz was being directed by "Manuu" to conduct pickups and drop-offs of suspected narcotics on multiple different days, including the day of Lopez Ruiz' arrest. On multiple occasions, Lopez Ruiz sent photos of what appears to be cocaine to "Manuu". In these messages Lopez Ruiz is inspecting and weighing the suspected cocaine to show "Manuu". In addition, Lopez Ruiz was keeping ledgers of the dealings he was conduction on behalf of "Manuu". On multiple occasions, Lopez Ruiz sent photos of different ledgers to "Manuu" with names and number amounts which appeared to be keep track of narcotic sales.

15.    Further review of the cellphones seized from Lopez Ruiz revealed that on the iPhone 14 conversations existed between Lopez Ruiz and a contact saved as "Manuel Fa" (52-673-114-9969).

16.    Records from MoneyGram and Western Union indicated that Manuel PEREZ Gastelum ("PEREZ") had received multiple money transfers where his telephone number was listed as 52-673-114-9969.

17.    Additionally, in the conversations found on Lopez Ruiz' iPhone 14, discussions between Lopez Ruiz and "Manuel Fa" show that "Manuel Fa" was directing Lopez Ruiz to send money transactions to multiple different people including PEREZ's mother, Guadalupe Gastelum Lara, and PEREZ's wife, Viviana Chaparro ("Chaparro").

18.    I have reviewed the conversations between Lopez Ruiz' two cell phones and the contacts saved as "Manuu" and "Manuel Fa." Based on this analysis, I believe that Lopez Ruiz' iPhone 7 and the Manuu telephone number (52-667-230-2077) were "dirty" phones. That is, they were phones that were not easily associated with Lopez Ruiz or PEREZ, and they were used to openly discuss drug trafficking. For example, these were the phones that Lopez Ruiz and PEREZ used to send pictures of cocaine packages or documents that appeared to be ledgers of drug transactions.

//

//

*Videos of Cocaine Sent by Lopez to PEREZ on January 9, 2025*

 

19. In contrast, Lopez Ruiz' iPhone 14 and the telephone number saved as "Manuel Fa" (52-673-114-9969) appeared to be their normal phones. They did not openly discuss drug trafficking on these phones, although they did discuss financial transactions.

20. An analysis of the conversations between Lopez Ruiz and "Manuu" and Lopez Ruiz and "Manuel Fa" points to "Manuu" and "Manuel Fa" being the same person. In multiple instances the two conversations appear to cross-reference each other or even shift between the two phones in a way that would be difficult to explain if they were not with the same person.

21. For example, on January 28, 2025, Lopez Ruiz and "Manuu" discussed Lopez Ruiz conducting a transaction for $34,800 USD with "betun" from "pastel" [cake in Spanish]. Lopez Ruiz sent Manuu a receipt confirming the transaction took place. Lopez Ruiz then told Manuu he had 22,800 with him and Manuu said he would send him something right now.

22. Within five minutes of the message from Manuu, Manuel Fa sent Lopez Ruiz an image of a bank card with a number ending in 4676 and asked Lopez Ruiz to send him a photo of the receipt. Around 20 minutes later, Lopez Ruiz sent Manuel Fa an image of a receipt showing he deposited $22,800 Mexican pesos in a bank account under the name

Guadalupe Gastelum Lara with a card ending in 4676. Border crossing records indicate that Lopez Ruiz entered the United States from Mexico hours after this transaction occurred (suggesting he was in Mexico for these transactions).

23.    Based on the exact amount of 22,800 being referenced between Lopez Ruiz and Manuu within 20 minutes of the transaction receipt being sent to Manuel Fa, I believe that Manuel PEREZ Gastelum is the person using both of these telephone numbers to communicate with Lopez Ruiz.

**D.    March through May 2026: PEREZ selling cocaine to L.B.**

24.    On March 3, 2026, at approximately 11:22 AM, agents watched as PEREZ exited his residence at 2331 Shamrock Street in San Diego, California and got into his Jeep Patriot bearing California license plate 9SBZ492. Tracking data shows that PEREZ then drove directly to Sharp Chula Vista Medical Center, 751 Medical Center Ct, Chula Vista, CA. According to the tracker data, PEREZ arrived in the parking lot near the MRI department at approximately 11:41 AM.

25.    Agents coordinated with Sharp Investigators to obtain video footage of the area where PEREZ was parked at Sharp Chula Vista Medical Center. The video footage shows a then-unidentified male (later identified as L.B.) wearing scrubs and hospital booties walk out of the building and stand in the parking lot near the MRI building. Moments later, PEREZ arrives in the Jeep, and L.B. enters the passenger side door of the Jeep. Then the Jeep drives away from the parking lot. Tracking data shows that PEREZ and L.B. then drove away from Sharp and pulled into the parking lot of the Canyon Plaza Shopping Center, 505 Telegraph Canyon Rd., Chula Vista. PEREZ then parked in front of the Chase Bank for approximately 2 minutes before pulling back out onto Telegraph Canyon Rd and driving directly back to the parking lot near the MRI department at Sharp Chula Vista, arriving at approximately 11:58 AM. Video footage shows that PEREZ pulled back into the parking lot near the MRI department and L.B. exited the passenger side of the Jeep. PEREZ drove away at approximately 11:59 AM. At approximately 12:16 PM, agents watched as PEREZ returned to 2331 Shamrock Street.

26.    Then, on April 1, 2026, at approximately 10:03 AM, agents watched as PEREZ exited 2331 Shamrock Street, got into the Jeep, and drove directly to Sharp Chula Vista Medical Center. PEREZ arrived at approximately 10:22 AM and again parked in the parking lot near the MRI department. Video footage then shows what appears to be L.B. exit the hospital and enter the passenger side door of the Jeep. Moments later, L.B. exits the Jeep and walks back towards the hospital. PEREZ then drove away from the parking lot at approximately 10:30 AM and drove directly back to 2331 Shamrock Street, arriving at approximately 10:47 AM.

27.    In coordination with Sharp Investigators agents were able to identify the Sharp employee meeting with PEREZ as L.B. Investigators learned that L.B. is currently under investigation by the Drug Enforcement Administration (DEA) for his involvement in the trafficking of narcotics through the mail from California to the east coast.

28.    On May 5, 2026, agents had a consensual conversation with L.B. During the meeting, L.B. stated that he had been purchasing cocaine from an induvial named "Manuel" and had this individual saved in his phone as "M Blueberry". L.B. provided the phone number for "Manuel"/ "M Blueberry", 619-634-1989. L.B. stated that "Manuel" meets L.B. outside his work area near the MRI department to conduct these cocaine transactions. During the meeting agents showed L.B. a photo of PEREZ and L.B. positively identified the photo as the person he knew as "Manuel"/ "M Blueberry". L.B. explained that PEREZ sells very clean "washed" cocaine that is very pure. L.B. further explained that he has PEREZ' contact saved as "M Blueberry" because PEREZ sells blueberry and mango flavored cocaine. L.B. stated that he has purchased cocaine from PEREZ on approximately 4-5 occasions and that PEREZ also sells cocaine to another individual that works at Sharp Chula Vista, named Rolando Tuazon Roman.

29.    Analysis of tracking data revealed that PEREZ and the Jeep have traveled to Sharp Chula Vista and parked in the MRI department parking lot on approximately 13 occasions since December 2025 to present. Many of the trips to Sharp are made directly after PEREZ left 2331 Shamrock Street.

**E.    May 26, 2026, Arrest of Manuel PEREZ Gastelum and Search of His Residence at 2331 Shamrock Street**

30.    On May 5, 2026, the Honorable Michelle M. Petit, U.S. Magistrate Judge, signed a federal arrest warrant for Manuel PEREZ Gastelum in the Southern District of California. On May 22, 2026, agents obtained a Federal residential search warrant signed by the Honorable Daniel E. Butcher, U.S. Magistrate Judge, in the Southern District of California for 2331 Shamrock St, San Diego, California, 92105, the residence of Manuel PEREZ Gastelum.

31.    On May 26, 2026, at approximately 12:30 PM, agents approached the residence at 2331 Shamrock Street and began their knock and announce to execute the search warrant. Moments later, PEREZ was seen fleeing from 2331 Shamrock Street in the direction of 2510 Violet St., California, 92105, a house agents know is occupied by PEREZ' sister, Imelda Perez Gastelum and her sons. Agents followed PEREZ in an attempt to take PEREZ into custody but PEREZ had a head start and agents lost visual of PEREZ in the brush.

32.    Additional agents set up outside of 2510 Violet Street in San Diego, California.  Moments later, agents saw a grey Hyundai Sedan, bearing California license plates 9HRU830, pull up in front of 2510 Violet Street. Then, agents saw PEREZ open the gate of the residence and look outside the gate towards the Hyundai sedan. PEREZ saw agents and immediately closed the gate of the residence.

33.    Agents then approached the driver of the Hyundai sedan, Alexander Martinez and asked him to exit the vehicle. Martinez became non-compliant and began to resist agents as they attempted to detain Martinez. During this time, while agents attempted to gain control of Martinez, Martinez dropped a small black wallet sized bag which agents later discovered contained cocaine.

34.    After agents identified that PEREZ was present inside 2510 Violet Street, agents set up and conducted a surround and call out of PEREZ. At approximately 2:34 PM, PEREZ came out of 2510 Violet Street and was successfully taken into custody.

35.    At approximately 2:05 PM agents began a search of 2331 Shamrock Street and seized the following items:

- Cocaine
- $9,300.00 USD
- Kilogram sized wrappings with white powdery residue
- Digital scale and grinder
- Miscellaneous documents
- Thirteen (13) cellphones
    - Black Alcatel Flip Phone (**Target Device-1**)- Top of Refrigerator
    - eTalk Flip Phone **(Target Device-2)**- Closet of PEREZ' Bedroom
    - Black Alcatel Flip Phone **(Target Device-3)**- Closet of PEREZ' Bedroom
    - Black iPhone **(Target Device-4)**- On the bed in PEREZ' bedroom
    - Black Nokia Cellphone **(Target Device-5)**- On the bed in PEREZ' bedroom
    - Black Samsung Cellphone **(Target Device-6)**- Closet of PEREZ' Bedroom
    - Blue Motorola Cellphone **(Target Device-7)**- Closet of PEREZ' Bedroom
    - Blue At&t Cellphone **(Target Device-8)**- Closet of PEREZ' Bedroom
    - Black LG Cellphone **(Target Device-9)**-Closet of PEREZ' Bedroom
    - Black ZTE Cellphone **(Target Device-10)**- Closet of PEREZ' Bedroom
    - Black Samsung Flip Phone **(Target Device-11)**- Closet of PEREZ' Bedroom
    - White iPhone **(Target Device-12)**- Closet of PEREZ' Bedroom
    - Gold iPhone **(Target Device-13)**- Closet of PEREZ' Bedroom

36.    Agents also discovered multiple cellphone boxes in PEREZ' bedroom, each with different cellphone numbers listed on the back of the box. In addition to the cellphone boxes, agents discovered multiple different sim cards in PEREZ' bedroom. Throughout the investigation agents discovered that PEREZ would frequently change his cellphone phone number, phone type, and even carrier. This is a common tactic with individuals involved in

illicit activities used to conceal their identity and illegal activity from law enforcement.

37. Through the course of the investigation agents determined that PEREZ was living at 2331 Shamrock Street by himself with his wife and daughters occasionally visiting from Sinaloa, Mexico.

38. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe the defendant was using the **Target Devices** to communicate with others to further the importation and distribution of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as the defendant, to attempt to minimize the amount of time they were involved in their trafficking activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data **beginning on November 1, 2024, up to and including May 26, 2026**.

## METHODOLOGY

39. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary

word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

40. Following the issuance of this warrant, I will collect the Target Devices and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

41. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

42. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//

//

**CONCLUSION**

43.    Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices**, as described further in Attachments A-1 through A-13, will yield evidence of PEREZ committing the **Target Offenses**. I further submit there is probable cause to believe that PEREZ's involvement in committing the **Target Offenses** extends back to at least November 1, 2024, which is the month that Lopez Ruiz was observed accessing a storage unit rented under PEREZ's name, and continuing up to and including May 26, 2026.  Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachments A-1 through A-13, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Alyssa Julian
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 10th day of June, 2026.

_____
HONORABLE BRIAN J. WHITE
UNITED STATES MAGISTRATE JUDGE